## AFFIDAVIT IN SUPPORT OF
## COMPLAINTS AND ARREST WARRANTS

I, Anthony Fontanella, Special Agent of the United States Drug Enforcement

Administration, being duly sworn, depose and state, as follows:

## INTRODUCTION

1.      I make this affidavit in support of applications for criminals complaints charging

WEIQING LI and LI QIN LI with the offense of manufacturing a controlled substance and/or

possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

In addition, I am seeking arrest warrants for WEIQING LI and LI QIN LI.

2.      I have been a Special Agent with the Drug Enforcement Administration ("DEA")

since April 2018.  I have been assigned to the Springfield Resident Office of the DEA's New

England Division since September 17, 2018.  As such, I am a law enforcement officer of the

United States within the meaning of Title 21, United States Code, Section 878, as well as Title

18, United States Code, Section 2510(7) (hereinafter 18 U.S.C. § 2510(7)), in that I am

empowered by law to conduct investigations of offenses enumerated in Title 21 of the United

States Code and Title 18, United States Code, Section 2516(1)(e).

3.      In connection with my official duties as a DEA Special Agent, I am responsible

for conducting investigations into violations of Titles 18, 21, and 31 of the United States Code

and other federal criminal statutes.  As a Special Agent of the DEA, I am responsible for

investigations focusing on the importation and distribution of illegal narcotics. I have received

basic training in narcotics investigations at the DEA Academy located in Quantico, Virginia.

4.      In addition to my training, I have had experience in the investigation of the

activities of narcotics traffickers.  Since joining the DEA, I have participated in narcotics

investigations, both as a case agent and in subsidiary roles, relating to the distribution of

controlled substances, including marijuana, cocaine, heroin, and other illegal substances.  I have participated in almost all aspects of narcotics trafficking investigations including, but not limited to, conducting surveillance, using confidential informants, executing arrest and search and seizure warrants, conducting court-authorized electronic surveillance, and acting in an undercover capacity.

5.      In regards to illicit marijuana operations, specifically, I have knowledge regarding the identification, location, and destruction of marijuana growing operations and can recognize the common methods used to cultivate marijuana and the different types and configurations of equipment used in marijuana growing operations.  I know that successful cultivation of marijuana inside a structure requires the regulation of heat, moisture, humidity and oxygen within the structure.  The indoor cultivation of marijuana requires the use of numerous high-intensity lights, metal halide, sodium or LED, often in the output range of 400 to 1000 watts. These types of lights often require a ballast transformer to convert 110 voltage to 220 volts.  I know indoor grows often require a form of a regulated ventilation system, to provide fresh air and to exhaust extra heat and humidity.  These lights, transformers, and ventilation fans, etc. are generally connected to one or more timing devices, or electronic sensors, so that they are turned on and off at regulated intervals.  The constant use of this type of grow equipment results in a high consumption of electricity.  Structures will often be modified to accommodate the extra vents and electrical demands.  The electricity will sometimes be diverted from the source in order to circumvent the meter.  Thus, the electric could be stolen from the power supplier and not captured as being consumed.  Windows will often be covered from the inside to prevent detection from law enforcement, or as a result of the altering of the interior of the structure to accommodate the grow rooms.

2

6.      Through my training and experience, I am able to recognize marijuana plants in various stages of live growth as well as when the plants have been harvested and processed for sale and ingestion.  I am also familiar with the unique appearance and odor of fresh growing marijuana, as well as dried processed marijuana bud, and other parts of the marijuana plant.  I can also recognize the odor of marijuana that is being ingested by burning.

7.      I also know, through training and experience, that indoor marijuana growing operations require a large amount of equipment and supplies.  The type of equipment required to grow marijuana (large lights, numerous electrical cords, water trays, PVC piping, water pumps, hoses, chemicals, fertilizers, sprayers, as well as light shields, ballast transformers, dehumidifiers, air filtration and conditioning units, potting soil or other grow medium, pots, etc.) is bulky and easily recognizable.  Persons involved in the indoor cultivation of marijuana often utilize outbuildings and/or other storage facilities (commercial for-rent storage units, for example) when they are unable or unwilling to store these items in their own residences. I am further aware that an indoor cultivation operation requires routine maintenance and oversight which can be time consuming and labor intensive.

8.      I have participated personally in the investigation of the subjects named in the affidavit.  I am familiar with the facts and circumstances of this investigation based on information I have received from a variety of sources.  This affidavit does not contain every fact known to me with respect to this investigation.  Rather, it contains those facts that I believe to be necessary to establish probable cause for issuance of the requested complaints and arrest warrants.

## BACKGROUND

9.      In or around July 2019, law enforcement began investigating the use of 32 Main Street, Monson, MA 01057 ("32 Main Street"), 36 Main Street, Monson, MA 01057 ("36 Main Street"), and 151 Palmer Road, Monson, MA 01057 ("151 Palmer Road") for the large-scale, illegal cultivation of marijuana.  32 Main Street and 36 Main Street are single-family residences, and 151 Palmer Road is a single-story commercial warehouse building.

10.      Through investigation into the ownership of 32 Main Street and 36 Main Street and surveillance, law enforcement identified an additional property, 4026 Pleasant Street, Thorndike, MA 01079 ("4026 Pleasant Street"), believed to be used for the large-scale illegal cultivation of marijuana.  4026 Pleasant Street is a single-family residence.

11.      Investigators conducting surveillance on these properties identified an additional property, 1036 Central Street, Palmer, MA 01069 ("1036 Central Street"), believed to be the residence for the individuals cultivating marijuana at the other properties described herein.  1036 Central Street is a single-family residence.

12.      In or around March 2020, investigators conducting surveillance identified an additional property, 2041-2043 High Street, Three Rivers, MA 01080 ("2041-2043 High Street"), believed to be used for the large-scale illegal cultivation of marijuana.  2041-2043 High Street is a two-family residence.

13.      On July 29, 2020, law enforcement agents executed a federal search warrant at 32 Main Street.  Agents located a large, commercial-style grow operation in the residence.  The grow operation included more than 700 marijuana plants as well as significant infrastructure including lighting, cooling, watering, and ventilation equipment.

14.     On July 29, 2020, law enforcement agents executed a federal search warrant at 36 Main Street.  Agents located a large, commercial-style grow operation in the residence.  The grow operation included more than 800 marijuana plants as well as significant infrastructure including lighting, cooling, watering, and ventilation equipment.

15.     On July 29, 2020, law enforcement agents executed a federal search warrant at 4026 Pleasant Street.  Agents located a large, commercial-style grow operation in the residence. The grow operation included more than 900 marijuana plants as well as significant infrastructure including lighting, cooling, watering, and ventilation equipment.

16.     On July 29, 2020, law enforcement agents executed a federal search warrant at 2041-2043 High Street.  Agents located a large, commercial-style grow operation in the residence.  The grow operation included more than 600 marijuana plants as well as significant infrastructure including lighting, cooling, watering, and ventilation equipment.

## SEARCH OF 151 PALMER ROAD

17.     On July 29, 2020, law enforcement agents executed a federal search warrant at 151 Palmer Road.  WEIQING LI and LI QIN LI were located inside the building.  When I entered the building I immediately noticed a strong smell that I know, based on my training an experience, to be marijuana.

18.     The building included a vestibule with a bathroom, where LI QIN LI was found. Further into the building were eight areas segmented into rooms.  In these rooms, agents found a large-commercial style grow operation, including lighting, cooling, watering, and ventilation equipment.  Agents also found approximately 1,184 marijuana plants. WEIQING LI was found near the entrance of one of these rooms containing marijuana plants and grow equipment.

19.     Based on my training and experience, and in particular my familiarity with the appearance, odor, and feel of marijuana and marijuana plants, I believe that the plants found at 151 Palmer Road were in fact marijuana plants. Further, based on my training and experience, the marijuana produced by the grow operation found at 151 Palmer Road exceeds what an individual would grow for personal consumption; given the significant expenses and upkeep needed to maintain a grow operation of this scope, such an operation would only be maintained for the purpose of distributing the harvested marijuana.

20.     After being read his *Miranda* warnings, in Mandarin, LI QIN LI admitted to a DEA agent that he was growing marijuana at 151 Palmer Road.

21.     After being read his *Miranda* warnings, in Mandarin, WEIQING LI admitted to a DEA agent that he was growing marijuana at 151 Palmer Road.

## CONCLUSION

22.     Based on the foregoing, I respectfully submit that there is probable cause to believe WEIQING LI and LI QIN LI have manufactured marijuana and/or possessed marijuana with the intent to distribute.

Signed electronically with authorization from
Special Agent Anthony Fontanella on July 29, 2020.

 /s/ Anthony Fontanella
Anthony Fontanella
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me on July  29 , 2020

 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

6